UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:23-CV-83

| | |
|---|---|
| STEPHANIE WALKER<br><br>                                Plaintiff<br><br>                    v.<br><br>CITY OF CHARLOTTE, NORTH CAROLINA<br><br>                                Defendant | AMENDED COMPLAINT<br><br>WITH DEMAND FOR TRIAL BY JURY |

**NOW COMES** Plaintiff, Stephanie Walker, by and through Counsel, and pursuant to N.C. Gen. Stat. § 40A-3(b), North Carolina tort law, and the United States Constitution, respectfully pleads to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S. Code § 1331 - Federal question, and 28 U.S. Code § 1367 - Supplemental jurisdiction.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

3. On February 13, 2023, and pursuant to N.C. Gen. Stat. §§ 40A-51 and 40A-43, a Memorandum of Action was filed in this case with the Mecklenburg County Register of Deeds, Book: 37931, Page: 34.

## PARTIES

4. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

5. Stephanie Walker (the Plaintiff) is an individual and citizen of the State of North Carolina who currently resides in the City of Charlotte, Mecklenburg County, North Carolina.

6. Defendant City of Charlotte (the City) is a duly organized and existing North Carolina municipal corporation.

7. At all times relevant to this action Charlotte was a "Local Public Condemnor" as defined by N.C. Gen. Stat. § 40A-3(b).

8. The City can be reached for service through Mayor Vi Lyles, 600 E. 4th St., Charlotte, North Carolina, 28202.

## FACTS

9. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

10. At all times relevant to this action, Plaintiff Stephanie Walker was the fee simple owner of the property located at 5130 Granite Creek Lane, Charlotte, North Carolina.

11. The City owns and operates the sewer and the sewer system for the purpose of providing and selling sewer services to the people of Charlotte and others.

12. There is no other entity which provides sewer service to Ms. Walker's home, and she is relegated to using the City's sewer system, and pays for such services with her tax dollars.

13. The sewer system and the sale of sewer services is a proprietary function of the City.

14. Upon information and belief, the City constructed, installed and operates the sewer main adjacent to Ms. Walker's Property.

15. Upon information and belief, the City is responsible for maintaining the sewer main adjacent to Ms. Walker's Property.

16. Upon information and belief, the City is responsible for repairing the sewer main adjacent to Ms. Walker's Property.

17. The City's sewer main adjacent to Ms. Walker's property was installed for the public

2

purpose of transporting sewage from the residents of Charlotte within the right of way of Granite Creek Lane.

18. The City has waived governmental immunity for claims related to damages caused by its negligent operation of the sewer system by acting in a proprietary capacity with regards to the City sewer system which currently damages Ms. Walker. *See, Eng. Constr. Co. Inc. v. City of Charlotte*, No. 320CV00346RJCDSC, 2020 WL 8831579, at *2–3 (W.D.N.C. Oct. 27, 2020), *report and recommendation adopted*, No. 3:20-CV-346-RJC-DSC, 2021 WL 918073 (W.D.N.C. Mar. 10, 2021).

19. Alternatively, Ms. Walker pleads that the immunity has been voluntarily waived by the purchase of liability insurance or participation in a government risk pool.

20. Moreover, the City is not entitled to governmental immunity, because it charges and collects a substantial fee for water and sewer service, which Ms. Walker (along with thousands of other customers) paid.

21. Additionally, the City is not entitled to governmental immunity because it also makes a profit on the provision of water and sewer.

22. Upon information and belief, the fees collected for the provision of water and sewer service do more than simply cover the operating costs of the municipal water system.

23. On February 15, 2022, in the early morning, the City's sewer main was clogged by a roll of sheetrock tape, causing a tremendous amount of sewage backflow to gush into Ms. Walker's home through her toilet.

24. The same backflow intruded into the home of the neighbor adjacent to Ms. Walker's home.

25. The tremendous volume of sewage from the City's sewer main caused raw sewage to enter Ms. Walker's home, flooding it with several inches of sewage and causing substantial

damage to Ms. Walker's real and personal property.

26. Ms. Walker is a widow of advanced years and lives on a very meager income that she receives from working in her church two days per week to supplement her social security.

27. Ms. Walker could not afford to pay for the damage to her home and personal property.

28. Initially the City offered the Plaintiff $15,000 for all repairs to Ms. Walker's home, regardless of the true amount of damages, pursuant to the City's program for remuneration for such instances, which set a maximum default for recovery to homeowners whose property is damaged due to backflow from the City's sewer system.

29. The City's adjuster approached Ms. Walker as she was standing in her yard, while sewage flowed through her house and spewed from the checkpoint in her yard.

30. Ms. Walker was in a state of shock and disbelief.

31. Ms. Walker could not enter her home immediately because of the ongoing condition.

32. Ms. Walker was not represented by any counsel and was not given a copy of any paperwork that she was presented with at that time.

33. Weeks later Ms. Walker was provided with a copy of the paperwork that she was ostensibly given at the time, which purports to be an "Initial Agreement and Release (the IAR)."

34. The IAR was not dated to the day, but the year on the IAR is listed as 2021, the year before the incident.

35. A separate page appears to be signed by Ms. Walker.

36. The IAR purports to offer the Claimant up to $15,000 in remuneration for damages "as a result of the backup of sewage…"

37. The IAR required the release of all other claims against the City.

38. The IAR required Ms. Walker to agree to a Final Agreement and Release (the FAR) before

funds would be distributed.

39. The IAR stated that a copy of the FAR was attached.

40. No copy of the FAR was attached and Ms. Walker did not receive a copy of the FAR.

41. Ms. Walker learned that the City has presented the same or similar kind of IAR to her neighbor whose house was flooded with sewage and she was also not given a copy of any agreement.

42. The City's adjuster provided Ms. Walker with the names of several preferred vendors to repair the damage that had occurred.

43. Ms. Walker immediately contacted Cardinal Restorations, LLC (Cardinal).

44. Cardinal estimated the damage repairs to the interior of her home, *excluding* her personal property, to be $38,200.

45. This estimate was calculated by using the least expensive materials that Cardinal could source.

46. This did not consider any of the damage to Ms. Walker's furniture, clothing, and other personal property, nor her time out of her home.

47. There were other expenses as well; by example, Ms. Walker could not afford to rent a hotel room, and the City would not pay for one, so she had to stay with a relative almost an hour from her work.

48. This added expense and aggravation was no fault of her own.

49. Ms. Walker's home was completely devalued to her as she could not live in it because of the condition of the house; it was unclean and unsafe.

50. Ms. Walker was then referred to counsel who attempted to get the City to cover all of Ms. Walker's damages, including her personal property.

51. Counsel advised the City that Ms. Walker's damages to her house alone exceeded $38,000 and she also lost a significant amount of her personal property because it was soaked in her neighborhood's sewage, and she had lost the use of her home as well.

52. Counsel explained that the emotional impact to Ms. Walker was significant.

53. Initially the City refused to pay more.

54. Eventually, after the local news covered the story, the City offered $45,000 to cover Ms. Walker's losses.

55. Counsel explained again to the City that Ms. Walker's expenses greatly exceeded that amount.

56. Ms. Walker was in a quandary because Cardinal could not start work before it was guaranteed payment, Ms. Walker did not have the money to pay Cardinal and the City would not guarantee any payment to Cardinal until after Ms. Walker signed the IAR.

57. Discussions continued between the City and Ms. Walker's counsel and the City drafted an even more restrictive agreement between Ms. Walker and the City.

58. The City now required a complete waiver of all claims and a waiver of certain proof requirements if she did sue the City.

59. Eventually the City sent Ms. Walker a Release of All Claims (the RAC).

60. The RAC forced Ms. Walker to waive any and all claims for any damages of any kind against the City in exchange for $45,000.

61. On July 6, 2022, the City wrote counsel:

> Shane,
>
> Pursuant to our conversation this morning, the City will pay for your client's mitigation and restoration costs up to the cap of $45,000, pursuant to the City's sewer backup plan.

We understand that you will make appropriate arrangements with Cardinal Restoration in this regard.

A precondition of the City making such payments, your client must execute and deliver the City's Initial and Final Agreements. I understand that you have copies of these agreements.

Thank you for your cooperation.

Court Fulton
Senior Assistant City Attorney

62. Counsel responded on July 6, 2022:

Court, *et al*.,

We definitely appreciate the increase in the sewer backup program plan. We hope this won't be used in the future, but we are glad it's there when it is necessary. However, there are some concerns.

First, will the city still install the backflow preventer?

Next, while we believe the increase in the plan payment will cover the cost of remediation and restoration to Ms. Walker's home, there are other factors to consider. Ms. Walker is being asked to sign a waiver of her rights to any further compensation. Why? How is this fair? She lost her furniture in this incident. When her house is restored, she literally has no furniture to move into the house. Do you suggest she sleep on the floor? She had a sewing room with several bolts of cloth. That was all ruined. She did not ask for any of this to happen. It literally invaded her home. Is she supposed to go looking for furniture to buy? These are not rhetorical questions. I would like a real answer. Does Charlotte expect Ms. Walker to go buy furniture?

When this started I said I wouldn't mind spending a few minutes on the phone to help her. I thought this would be an easy resolution. But at this point I have spent over 30 hours working on this case. I don't think I should have to work for free to bring about a resolution that should have come early in this process. And we all know she would have never seen an increase in the plan payment if she had not had representation.

We do not want to sue the city. Please understand that. But asking her to waive any rights to further compensation so that she can get the program funds that should be automatic is not fair dealing. This act is antithetical to a city "for the people." Ms. Walker pays her taxes; she should not have to sign away her rights to compensation to get this plan money. Why is she being asked to do this? Why is it not paid automatically when the city sees that its sewer backup caused a

problem?

Finally, you have asked Ms. Walker to contact Cardinal. When she tells this company that she is not signing a waiver and they will not be paid until she does, they will not perform any work. Who would? So we are back at square one.

I would like some clarification on this issue. I have asked Ms. Walker to estimate what she lost in furniture. My fees to date are over $10,000 (30 hours @$350/hour) but I would stipulate to that amount if this is resolved quickly. Otherwise, the city is literally forcing us to sue it and nobody wants that.

Best regards,
Shane Perry

63. On July 6, 2022, the City responded:

Shane,

The backwater valve has been installed by MD Plumbing & Mechanical. The City paid for that.

You may represent to Cardinal that the City will pay its invoices up to the $45,000 cap.

Otherwise, we are not in a position to opine on your client's legal options, if any.

Court Fulton
Senior Assistant City Attorney

64. The City knew that this did not cover all of Ms. Walker's damages.

65. The City knew it was at fault for damaging Ms. Walker's property.

66. That email was followed by another the same day:

Shane,

To be clear, as I stated before, any such payment by the City is expressly contingent upon your client Stephanie Walker executing the Initial Agreement and Release and the Final Agreement and Release, provided to you previously, and delivery of the executed documents to the undersigned.

Thank you for your cooperation.

Court Fulton
Senior Assistant City Attorney

67. The City's utter disregard for the plight of a Charlottean that it damaged is appalling and shows the intent of the City to take advantage of underprivileged citizens.

68. On July 7, 2022, counsel informed the City that the Plaintiff did not have a bed to sleep on because it had been damaged by the sewage.

69. The City responded on July 8, 2022:

> Shane,
>
> We might suggest that your client might make a claim for the actual cash value of any damaged contents or furniture.
>
> That is a suggestion only. It is not legal advice or any representation by the City's as to its legal liability or other obligation in this matter.
>
> Any such payment would count toward the $45,000 cap under the City's sewer backup program, as we have discussed. Any such payment is expressly contingent upon your client Stephanie Walker executing the Initial Agreement and Release and the Final Agreement and Release, provided to you previously, and delivery of the executed documents to the undersigned.
>
> Court Fulton
> Senior Assistant City Attorney

70. But the City knew that this amount did not come close to covering Ms. Walker's damages.

71. Counsel advised the City that Ms. Walker was desperate enough that she would settle the claim for $65,000, but that it was only out of sheer desperation because she was no longer able to live with relatives and she had been without her home and personal property for over six months.

72. The city rejected the offer out of hand, simply reiterating the new policy limit of $45,000, which ignored the reality of Ms. Walker's situation.

73. Because of her meager pay and inability to earn more because of her age, Ms. Walker had no hope of paying for the damage to get back in her home.

9

74. A Go Fund Me set up to help her only garnered one donation of $10.00.

75. By August Ms. Walker was so desperate that she agreed to sign the RAC because she was literally homeless, and she knew she could at least sleep on the floor of her home if it were repaired.

76. On August 8, 2022, counsel responded:

> Court, *et al*.,
>
> I am aware that $65,000 is more than $45,000.
>
> At this point Ms. Walker is losing her housing and will be sleeping in her car. She has no other options and she has no choice but to sign this release out of desperation. She's in her late 70s and she won't last long living in her car. So send over a clean copy of the release as soon as possible.
>
> Shane Perry

77. The City assured Ms. Walker that it would not pay any money for the damage it caused until she signed the RAC.

78. Because she had absolutely no other choice, on August 10, 2022, Ms. Walker signed the RAC.

79. Below her signature she wrote, "I'm homeless and I don't have another choice."

80. With unmitigated heartlessness, the City rejected this RAC and insisted that she sign another copy without the addendum.

81. On August 10, 2022, the City wrote:

> Shane,
>
> Unfortunately, we cannot accept this Release as altered, *inter alia*, as it appears to intend to put the City on notice that the Release was not signed freely and under no duress.
>
> Court Fulton
> Senior Assistant City Attorney

82. On August 10, 2022, counsel replied:

> The city is already on notice that she has no options. I have told you that she is homeless and has no money to fix what the city has done. But I will have her sign a release that is unaltered unless you are saying that the city is retracting its offer.

83. The City accepted the RAC that Ms. Walker signed under undue influence.

84. The City knew or should have known Ms. Walker was asserting claims on February 15, 2022, or shortly thereafter and should have asserted an immediate litigation hold.

85. By letter dated June 1, 2022, Ms. Walker's counsel gave the City notice to preserve the broken sewer main pipe and other documents.

86. After Ms. Walker signed the RAC, the City paid $45,000 to her, which she was required to give to Cardinal.

87. Cardinal began work on her home soon after.

88. At this date, the restoration is nearing completion, but Ms. Walker has not been compensated for her personal property, the time she lost from her home, her expenses because of being displaced, her emotional distress, and other damages to be determined by a jury.

89. The issue of the City's sewer system, however, is still not remedied.

90. At some point on a Sunday morning during February or March of 2023, Ms. Walker's toilet was overflowing again.

91. Ms. Walker contacted Cardinal Restoration who put her in contact with Roby Services, Inc. (Roby), who told her that there was a problem with the backflow preventer that had been installed by the City after the previous flooding event.

92. Ms. Walker was instructed by Roby not to flush any paper products down her toilet; she was to collect them in a paper bag and dispose of them in the garbage.

93. This created an unclean, unsanitary and embarrassing situation for Ms. Walker.

94. The intrusion into Ms. Walker's home has continued for more than a year because the City's agent installed the incorrect backflow preventer.

95. This agent was chosen by the City and was, in fact, done without Ms. Walker's knowledge.

96. The effect of this is that Ms. Walker has been constantly, and repeatedly, completely deprived of her home by the acts of the City, with all of the attendant damages that precipitate from losing her home as described herein.

97. Moreover, the fear of a recurrence of the sewage flowing through her home, ruining it again has caused her ongoing emotional distress.

98. Such emotional distress is particularly difficult for a widow of advanced years.

99. On March 12, 2023, Roby worked on Ms. Walker's sewer pipes and the backflow preventer but did not install any natural-appearing fixtures (such as an imitation rock) to cover the new pipes jutting from the ground, which could become a danger and which demises the aesthetic value of her home.

100.    Ms. Walker has no idea when the unsightly pipes will be covered because no word was given to her, but her damages continue apace.

101.    The City's indifference as to its obligations to Ms. Walker for her safety and for the proper care that should have been shown to her and her property in this situation reveals a conscious disregard of Ms. Walker's rights, and the injuries suffered by Ms. Walker are attended by circumstances of malice, and reckless, willful and wanton misconduct that was extreme and outrageous.

## UNDUE INFLUENCE

102.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

103.     Ms. Walker was a victim of undue influence.

104.     The following facts demonstrate that Ms. Walker was a person susceptible to the undue

influence that was exercised against her and that her will was overcome:

a)  her economic condition: she had no money to restore her home;
b)  her age: she is in her late 70s;
c)  her extreme lack of bargaining power against the City government;
d)  her physical and mental condition: she was extremely stressed by losing her home at this
    time in her life and with so few resources;
e)  the unfairness of the RAC which ignored both the City's liability and the actual damages
    to Ms. Walker;
f)  the lack of independent consideration for the RAC;
g)  the relationship between Ms. Walker and the City: as a taxpayer, she relies on the City to
    protect her interests; and,
h)  most importantly, the fact that Ms. Walker was a victim in distress and in an emergency
    situation: Ms. Walker was going to have to sleep in her car during the winter, and this
    may well have killed her.

105.     No reasonable person would have signed the RAC because of its egregiousness.

106.     The city knew of its position of power over Ms. Walker and her inability to resist the

City.

107.     The waiver of rights should be set aside as determined at trial by a jury.

## NEGLIGENCE

108.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference

as if set forth fully herein.

109.     At all times relevant hereto, the City owned the sewer main.

110.     The City had a duty to use reasonable, ordinary care in the installation, maintenance,

inspection of, and repair of the sewer main and is liable for injuries and damages resulting

from the City's failure to exercise such reasonable, ordinary care.

111.     The City's failure to use reasonable, ordinary care in the installation of the sewer main

caused foreseeable damage to Ms. Walker's property.

112. The City's failure to use reasonable, ordinary care in the maintenance and inspection of the sewer main caused foreseeable damage to Ms. Walker's property as described herein

113. The City's failure to use reasonable, ordinary care in the repair of the sewer main caused foreseeable damage to Ms. Walker's property as described herein.

114. If the City had used reasonable care in its installation, maintenance, inspection and repair of the sewer system that it has exclusive control over and operates as a proprietary function, there would not have been a roll of sheetrock tape blocking up the system and causing flooding of raw sewage into Ms. Walker's home.

115. The City's failure to use reasonable, ordinary care in the installation, inspection, maintenance, and repair of the sewer main constitutes a breach of its duty to Ms. Walker.

116. The City's failure to cut off the water gushing from the sewer main and into Ms. Walker's home on February 15, 2022, within a reasonable time also constitutes a breach of its duty to properly repair the sewer main and protect Ms. Walker's property from injury.

117. The City's failure to require backflow preventers at Ms. Walker's residence, which would have kept the sewage from backing up from the sewer main and into Ms. Walker's home, constitutes a breach of its duty to Ms. Walker.

118. The City's failure to warn Ms. Walker of the need for backflow preventers constitutes a breach of its duty to Ms. Walker.

119. The City's failure to keep out objects from the sewer main such as the roll of sheetrock tape which caused the backup into Ms. Walker's home constitutes a breach of its duty to Ms. Walker.

120. Upon information and belief, had the sewer main been properly installed, maintained, inspected, and repaired, Ms. Walker would not have suffered damages on February 15, 2022,

which have continued for over a year.

121.     The same is true of the backflow preventer that was eventually installed but was inadequate.

122.     As a result of the City's negligence, Ms. Walker has incurred significant monetary damages as well as emotional distress and other damages as alleged herein.

123.     As a result of the City's failure to properly install, inspect, maintain and repair the sewer main, the City is liable to Ms. Walker for damages in an amount to be determined at trial by a jury.

124.     The Court can infer the negligence of the City under the doctrine of *res ipsa loquitur*, as there was no way that a roll of sheetrock tape could make its way into the system other than the city's failure to properly install, maintain, inspect and repair the sewer system that it solely operates as a proprietary function.

## PRIVATE NUISANCE

125.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

126.     At all times relevant to this action, Ms. Walker had a right and interest in the private use and enjoyment of her Property.

127.     As described above, the City's installation, maintenance, inspection and repair of the sewer main constitutes negligence.

128.     The City's negligence and resulting flooding of Ms. Walker's Property with sewage substantially and unreasonably interfered with Ms. Walker's use and enjoyment of her real and personal property for a year at the time of the filing of this Amended Complaint, and this interference continues.

129. At this time Ms. Walker's toilets are backing up again and upon information from Roby Services, Inc., the backflow preventer that was finally installed is not of the proper capacity.

130. The interference with Ms. Walker's property continues and is not limited to a single incidence.

131. The City's conduct as set forth herein resulted in the damage to Ms. Walker's Property including a substantial reduction in the fair market value for a period of time, and therefore the City is liable to Ms. Walker for private nuisance in an amount to be determined at trial by a jury.

## INVERSE CONDEMNATION OF A TEMPORARY SEWAGE EASEMENT
## N.C. Gen. Stat. §40A-51

132. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

133. Pursuant to N.C. Gen. Stat. § 40A-51, on February 13, 2023, the Plaintiff filed with the Mecklenburg County Register of Deeds a Memorandum of Action in Book: 37931, Page: 34. (Exhibit A)

134. This claim is for inverse condemnation of a temporary sewage easement by the City and for damages to Ms. Walker's property on February 15, 2022, that began when the water from the City's sewer main flooded her property.

135. The temporary sewage easement and the flooding caused by the City's sewer main, negatively impacted and completely deprived Ms. Walker of the ability to properly use or dispose of her property at fair market value or at any value and this deprivation has continued for more than a year.

136. The City is a municipal corporation which has the rights conveyed it to by the State of

North Carolina including eminent domain.

137. At all relevant times herein, Stephanie Walker owned, and still owns, the real property located in the City of Charlotte, Mecklenburg County at 5130 Granite Creek Lane, Charlotte, North Carolina.

138. The conduct of the City in allowing its sewer main, that was within its sole care, custody and control, to become clogged and flood Ms. Walker's property with sewage constitutes a temporary taking of a sewage easement over Ms. Walker's property that caused damages.

139. These acts described above rendered Ms. Walker's property unmarketable at fair market value and depressed its fair market value for a period of time until repaired.

140. Upon information and belief, the City has treated similarly situated property owners differently by paying some property owners for all of the damages to their property caused by broken sewer mains and other broken City water pipes while paying Ms. Walker for only part of her damages, have completely deprived Ms. Walker of the value of her property, have substantially interfered with Ms. Walker's elemental and fundamental state constitutional rights growing out of the ownership of the property, and have restricted Ms. Walker's capacity to freely dispose, use and enjoy her property.

141. The City's actions have deprived Ms. Walker of the free and unhindered use of her property, have destroyed and nullified her property's value, and have abridged and destroyed Ms. Walker's right to dispose, use or enjoy her property in a substantial degree resulting in injuries which are not merely consequential or incidental.

142. The public purpose of a sewage system is to take the sewage from the taxpayer's home to another location.

143. Instead of depositing the sewage at the appropriate sewage facility, the City has used Ms.

Walker's home for a sewage repository.

144. Because the taking of Ms. Walker's property was not her fault but the City's, the City is obligated to compensate her for this taking.

145. The City's actions have resulted in the temporary, but ongoing, taking of a sewage easement by inverse condemnation of Ms. Walker's property pursuant to N.C. Gen. Stat. § 40A-51 for which Ms. Walker is entitled to recover just compensation, interest, costs, reimbursement of taxes, and attorneys' fees pursuant to N.C. Gen. Stat. § 40A.

## **VIOLATION OF 42 U.S.C. § 1983**

146. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

147. At all times during the facts described herein, the City acted under color of law.

148. The City exercised power possessed by virtue of state law and made possible only because the City is clothed with authority of state law to build, maintain, inspect and repair the City's sewer lines.

149. The City failed to give notice that its manner and methods of building, maintaining, inspecting and repairing the City's sewer lines affected Ms. Walker's use of her property.

150. The City acted under color of law in accordance with the policies of the City and deprived Ms. Walker of her rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments of the United States Constitution and pursuant to 42 U.S.C. § 1983.

151. The actions of the City as described herein constitute an unlawful taking in derogation or violation of the Fifth Amendment of the United States Constitution as applied to the State of North Carolina pursuant to the Fourteenth Amendment to the United States Constitution.

152. To wit: Ms. Walker's property was taken for public use without just compensation with the attendant damages as described herein.

153. Ms. Walker's interest in her property was abridged by government actions, taken under the color of law, without the protections of due process under the law.

154. Such due process rights include advance notice of imminent official action which would affect Ms. Walker's property interest and would have reasonably made her aware that the value of her property or her enjoyment of that property would have been affected by the government decisions which were being made.

155. These decisions include the facts stated herein, including the decision to allow a blockage of the sewer line and the failure to compensate Ms. Walker for her property which is still being demised without proper compensation pursuant to the City's "Sewer Backup Plan."

156. This unlawful taking without due process is in its own specific harm to Ms. Walker. See *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Yates v. Jamison*, 782 F.2d 1182, 1190-1191 (4th Cir. 1986).

157. Moreover, City refused to properly compensate Ms. Walker based on a policy set forth by the City that disregarded her actual damages and any danger inherent in her current situation.

158. This taking entitles the Plaintiff to just compensation arising from such taking in an amount to be determined at trial by a jury.

159. The City not entitled to sovereign immunity or governmental immunity in actions brought pursuant to 42 U.S.C. § 1983.

160. The City could have maintained the sewer line properly so as not to allow the sewer system to be breached so that such a large obstruction could become lodged in the system and cause backups.

161.    Moreover, the City could have required backflow preventers in the system which would have prevented the flow of sewage into Ms. Walker's house.

162.    Ms. Walker never donated the use of her home for the storage of the City's raw sewage.

163.    The city appropriated Ms. Walker's home when it caused or allowed wastewater to flow from the City's wastewater pipe system into Ms. Walker's home.

164.    The backflowing of sewage and untreated wastewater into Ms. Walker's home was a physical invasion of her real property.

165.    The City appropriated this real property by its own actions, which constitutes a public taking of private property, contrary to the Fifth and Fourteenth Amendments to the United States Constitution, and with reckless indifference to Ms. Walker's rights.

166.    The city has failed to justly compensate Ms. Walker for this taking.

167.    The City's refusal to compensate Ms. Walker for this taking is an unlawful, arbitrary, discriminatory, and capricious effort to deny Ms. Walker her constitutional rights.

168.    The City's taking deprived Ms. walker of the use and enjoyment of her home for over a year and caused Plaintiff excessive emotional distress and expenses that she should not have had to spend, including, but not limited to, extra expense traveling an hour from work when her home was less than a five-minute drive from the church where she works.

169.    As a result of the City's taking of Ms. Walker's property, she is entitled to monetary compensation to vindicate her civil and constitutional rights because of the damage done to her home during the City's physical invasion of her property, pursuant to 42 U.S.C. §1983.

170.    Ms. Walker is entitled to recover her actual costs and attorneys' fees expended as a result of the violations of her civil and constitutional rights by the City, as described in this Amended Complaint, pursuant to 42 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

171.     Plaintiff exercises her right to a trial by jury on all issues so triable.

**WHEREFORE,** Plaintiffs respectfully prays the Court that Ms. Walker recovers the following:

1. An award for compensatory damages plus interest thereon at the highest rate allowed by state and federal law from February 15, 2022, until paid in full;

2. An award for punitive damages as allowed by state and federal law;

3. An award for damages arising out of the City's temporary taking by inverse condemnation of Ms. Walker's property and violation of Ms. Walker's constitutional rights pursuant to 42 U.S.C. and the United States Constitution;

4. A judgment against the City for Ms. Walker's reasonable attorneys' fees, costs, and other fees as state and federal law;

5. Interest at the maximum legal rate on all amounts awarded herein from February 15, 2022, until paid as allowed by state and federal law;

6. A judgment that sets aside any waiver of rights that Ms. Walker signed due to undue influence;

7. Plaintiffs recover reasonable attorneys' fees as allowed by state and federal law;

8. Plaintiffs recover the costs of this action from the Defendant; and

9. Such other and further relief that as Court deems just and proper.

**TODAY** is May 1, 2023.

**COLLUM & PERRY**

By:     */s/ M. Shane Perry*
M. Shane Perry
NC Bar Number: 35498
109 W. Statesville Ave.,
Mooresville, NC 28115
Telephone: 704-663-4187
shane@collumperry.com
*Attorney for Plaintiff*

STEPHANIE WALKER

                        **Plaintiff**

        **v.**

CITY OF CHARLOTTE, NORTH
CAROLINA

                        **Defendant**

**AMENDED COMPLAINT**

**WITH DEMAND FOR TRIAL BY JURY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically via U.S. Mail, postage prepaid, and CM/ECF with the United States District Court, Western District of North Carolina, with notification being sent electronically to all counsel of record, and specifically to:

**CRANFILL SUMNER LLP**

Stephanie H. Webster
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704) 332-9994
swebster@cshlaw.com
*Attorney for Defendant City of Charlotte*

**TODAY** is May 1, 2023.

**COLLUM & PERRY**

By:    */s/ M. Shane Perry*
        NC Bar No. 35498
        109 W. Statesville Ave.
        Mooresville, NC 28115
        Telephone: 704-663-4187
        Fax: 704-663-4178
        shane@collumperry.com
        *Attorney for Plaintiff*