UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-CV-83-MOC

| STEPHANIE WALKER, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHARLOTTE, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant City of Charlotte's motion for summary judgment, filed on September 13, 2024. (Doc. No. 30). Plaintiff Stephanie Walker filed a response, and Defendant filed a reply. (Doc. Nos. 33, 35). The Court held a hearing on November 7, 2024. Having considered the motion and reviewed the pleadings, the Court will grant Defendant's motion for summary judgment.

## I. Background

### A. Procedural History

Plaintiff filed this action on February 13, 2023. (Doc. No. 1). On May 2, 2023, Plaintiff filed an amended complaint. (Doc. No. 14). Plaintiff brings claims under N.C. GEN. STAT. § 40A-51 for Inverse Condemnation and 42 U.S.C. § 1983 for alleged violations of her Fifth and Fourteenth Amendment rights, as well as for undue influence, negligence, and private nuisance. (Id. ¶¶ 102–170). Plaintiff seeks compensatory relief, punitive damages, attorneys' fees, interest, and a judgment that sets aside any waiver of rights signed by Plaintiff. (Id. at 21, ¶¶ 1–8).

Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 17, 2023, arguing that Plaintiff signed a waiver, releasing all of her claims. (Doc. No.

1

15). Plaintiff filed a response on July 27, 2027, and Defendant filed a reply on August 19, 2023. (Doc. Nos. 16, 19). Plaintiff argued that the waiver was invalid because she signed it under duress. The Court held a hearing on the motion to dismiss on October 23, 2023, and subsequently denied Defendant's motion on December 4, 2023. (Doc. No. 20). This Court allowed the matter to go to discovery on the issue of undue influence. Following this limited discovery, Defendant then filed another summary judgment, which is now pending before the Court.

### B. Facts

Plaintiff owns property located at 5130 Granite Creek Lane, Charlotte, North Carolina. (Doc. No. 14 ¶ 10). Defendant owns and operates a sewer main adjacent to Plaintiff's property. (Id. ¶¶ 11, 14). On or about February 15, 2022, a roll of sheetrock tape clogged the sewer main, causing sewage to backflow into Plaintiff's home through a toilet. (Id. ¶ 23). Several inches of raw sewage flooded Plaintiff's home, substantially damaging her real and personal property. (Id. ¶ 25).

Plaintiff is a widow of "advanced years" with a "very meager income." (Id. ¶ 26). Defendant initially offered Plaintiff $15,000 as remuneration pursuant to its maximum default recovery for homeowners damaged due to sewage backflows, in exchange for a release of all claims against Defendant. (Id. ¶¶ 28, 37). Ostensibly, Plaintiff accepted this settlement amount and received an "Initial Agreement and Release" with Plaintiff's signature. (Id. ¶¶ 33, 35). After the sewage backup, Plaintiff contacted the Defendant's preferred vendor, Cardinal Restoration ("Cardinal"), for an estimate to repair the damage. (Id. ¶¶ 42–43). Cardinal's estimated repairs amounted to $38,200. (Id. ¶¶ 44–46). Cardinal refused to start work on Plaintiff's home until it was guaranteed payment. (Id. ¶ 56).

Plaintiff was referred to counsel, who negotiated on her behalf with Defendant. (Id. ¶¶ 50, 61–62). Following negotiations with Plaintiff's attorney, Defendant offered Plaintiff $45,000. (Id. ¶ 54). To receive the funds, Plaintiff was required to sign a "Release of All Claims" (hereinafter "Release"), waiving all claims against Defendant. (Id. ¶¶ 57-60). Through a series of emails, Plaintiff's attorney attempted to negotiate the terms of the Release and a higher settlement amount than the $45,000 offered, but the City declined to change its offer or the terms of the Release. (Id. ¶¶ 61–63, 66, 69, 76).

On August 10, 2022, Plaintiff signed the Release, writing below her signature, "I'm homeless and I don't have another choice." (Id. ¶¶ 78–79). Defendant informed Plaintiff's attorney that the altered Release was not acceptable "as it appears to intend to put the City on notice that the Release was not signed freely and under no duress." (Id. ¶ 81). Plaintiff's attorney responded that Defendant was "on notice that [Plaintiff] has no options . . . But I will have her sign a release that is unaltered unless you are saying that the [C]ity is retracting its offer." (Id. ¶ 82). Subsequently, Plaintiff signed an unaltered copy of the Release, and Defendant paid her the agreed upon amount of $45,000. (Id. ¶ 86).

## II.     Legal Standard

Summary judgment is appropriate where the movant shows (1) the absence of any genuine dispute of material fact and (2) that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the dispute under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact subject to genuine dispute if a reasonable jury could find in favor of either party. Id. Ruling on a motion for summary judgment, the Court construes all facts and inferences therefrom in the light most favorable to the non-movant. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "'Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant—here, Defendant—bears the burden to dispel any genuine disputes of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes this threshold showing, the burden shifts, and the non-movant must adduce specific, material facts that give rise to a genuine dispute. Id. at 324; Anderson, 477 U.S. at 248. Naked allegations and conclusory denials are insufficient for a nonmovant to survive summary judgment. Anderson, 477 U.S. at 252.

### III. Discussion

"A comprehensively phrased general release, in the absence of proof of contrary intent, is usually held to discharge all claims . . . between the parties." Hardin v. KCS Int'l, Inc., 199 N.C. App. 687, 699 (2009) (citations omitted). "[U]ndue influence ... is a fraudulent influence, or such an overpowering influence as amounts to a legal wrong." Elrod v. WakeMed, 561 F. Supp. 3d 592, 613 (E.D.N.C. 2021), aff'd, No. 21-2203, 2023 WL 1256601 (4th Cir. Jan. 31, 2023) (citation omitted). Undue influence is not mere pressure, but requires a showing (and so necessarily, allegations) of "circumstances and inferences from which a jury could find that the person's act was not the product of his own free and unconstrained will, but instead was the result of an overpowering influence over him by another." Barbee v. Johnson, 190 N.C. App. 349, 358 (2008) (citations and internal quotations omitted). Moreover, "actions taken by one voluntarily cannot be said to be given under duress or undue influence." Howell v. Landry, 96 N.C. App. 516, 527 (1989).

According to Plaintiff, Defendant had unequal bargaining power, and pressured Plaintiff, thus exerting undue influence. Plaintiff argues that while a comprehensive release usually functions to discharge claims between parties, that is not the case when there is proof of contrary intent. Plaintiff believes there is contrary intent here because of Plaintiff's note on the original settlement document. Plaintiff also argues that the amount of the settlement clearly did not compensate her for her total loss.

The Court finds that there is no genuine issue of material fact on the issue of undue influence. The fact that Plaintiff noted that she had no other choice on an earlier copy of the release does not prove her contrary intent. Instead, her signing the release soon after (seemingly following advice from counsel), and without a note, indicates her desire to strike a bargain so she could begin repairs on her home. Plaintiff may well be correct that the amount of the settlement did not fully compensate Plaintiff for her loss. However, a settlement is inherently a compromise—Plaintiff sacrificed full compensation to avoid the uncertainty of litigation and to repair her home as soon as possible.

Moreover, Plaintiff has not produced evidence of the pressure required for undue influence. In her complaint, Plaintiff describes the settlement negotiations between Defendant and her own attorney, which led to increased compensation from $15,000 to $45,000—a result that suggests Plaintiff had at least some bargaining power.[1] Furthermore, Plaintiff's advanced age and economic condition do not, on their own, show that Defendant had "overpowering influence" over Plaintiff. There is no evidence to suggest Plaintiff was in any way forced to sign

---

[1] Plaintiff also points to a perceived threat by Defendant during those negotiations but does not explain how that "threat" amounts to undue influence. Moreover, it is not clear why Plaintiff's attorney did not simply point out that he had not engaged in ethical violations under the current rules and continued negotiations.

the agreement. Instead, the alleged facts and evidence point to a difficult but voluntary decision by Plaintiff to enter the contract even though it did not cover the entirety of the damage to her home.

Though the Court sympathizes with Plaintiff's unfortunate situation, invalidating contracts like this one would make it difficult for parties to strike bargains that offer sorely needed relief. Because there is no genuine issue of material fact as to the issue of undue influence, and the contract contained a valid, comprehensively phrased release of claims, Defendant's motion for summary judgment will be granted.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment (Doc. No. 30) is **GRANTED**. This matter is **DISMISSED** with prejudice.

Signed: April 1, 2025

Max O. Cogburn Jr.
United States District Judge